1  E. JOSEPH CONNAUGHTON (SBN 166765)
   jconnaughton@paulplevin.com
2  AARON J. SCHU (SBN 299701)
   aschu@paulplevin.com
3  **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
   101 West Broadway, Ninth Floor
4  San Diego, California 92101-8285
   Telephone: 619-237-5200
5  Facsimile: 619-615-0700

6  Attorneys for Defendants Illumina, Inc.
   and Verinata Health, Inc.
7

8

9                    **UNITED STATES DISTRICT COURT**

10        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

11

| | |
|---|---|
| 12  ALBERT MARK GOLD, | Case No. 4:22-cv-05036-JST |
| 13        Plaintiff, | **DEFENDANTS ILLUMINA, INC. AND VERINATA HEALTH, INC.'S NOTICE** |
| 14        v. | **OF MOTION AND RULE 12(b)(1) MOTION TO DISMISS AND COMPEL** |
| 15  ILLUMINA, INC., a Delaware corporation, | **ARBITRATION OR, IN THE ALTERNATIVE, TO STAY ACTION** |
| and VERINATA HEALTH, INC. a Delaware | **PENDING ARBITRATION** |
| 16  Corporation, | |
| 17        Defendants. | Date:        December 22, 2022 |
| | Time:        2:00 p.m. |
| 18 | Courtroom:  6 – 2nd Floor |
| | Judge:       Hon. Jon S. Tigar |
| 19 | |

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION .................................................................................1

3  MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

4  I. INTRODUCTION .............................................................................................................2

5  II. BACKGROUND ..............................................................................................................2

6      A.    Illumina, Inc. and Verinata Health, Inc. ..................................................2

7      B.    Plaintiff is Hired and Agrees to Arbitrate any Dispute ..........................2

8      C.    Procedural Background .............................................................................3

9  III. ARGUMENT ..................................................................................................................4

10      A.    The Federal Arbitration Act Governs the Arbitration Agreement .......4

11      B.    An Action is Properly Dismissed When All Claims Are Subject to
              Arbitration ................................................................................................6

12

13      C.    The Arbitration Agreement is Valid and Binding .................................7

14             1.    Plaintiff and Illumina Entered Into an Enforceable Contract to
                   Arbitrate ..........................................................................................8

15             2.    The Arbitration Agreement is Fair and Conscionable ...................8

16                    a.    There is No Procedural Unconscionability .........................9

17                    b.    There is No Substantive Unconscionability .....................10

18                    c.    The Court May Strike Any Unenforceable Clause ..........11

19             3.    Verinata May Compel Arbitration .............................................11

20                    a.    Verinata is an Intended Third-Party Beneficiary of the
                       Arbitration Agreement ....................................................12

21                    b.    Equitable Estoppel Permits Verinata to Invoke the

22                         Arbitration Agreement Even Though It is Not a Signatory ...........14

23                     c.    The Agency Exception Permits Verinata to Invoke the
                       Arbitration Agreement Even Though It is Not a Signatory ...........15

24             4.    Defendants Have Not Waived Their Right to Compel Arbitration .............15

25      D.    The Arbitration Agreement Applies to All Claims Related to Plaintiff's
              Employment .............................................................................................18

26

27      E.    This Case Should Dismissed or, in the Alternative, Stayed ....................19

28  IV. CONCLUSION ...............................................................................................................19

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*
513 U.S. 265 (1995) ............................................................................................ 4, 5

*Arthur Andersen LLP v. Carlisle*
556 U.S. 624 (2009) ............................................................................................... 12

*AT&T Mobility LLC v. Conception*
563 U.S. 333 (2011) ................................................................................................. 7

*In re Barney's, Inc.*
206 B.R. 336 (S.D.N.Y. 1997) ................................................................................. 6

*Beauperthuy v. 24 Hour Fitness USA, Inc.*
No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) ................................ 18

*Chamber of Commerce of U.S. v. Becerra*
438 F. Supp. 3d 1078 (E.D. Cal. 2020) ................................................................... 4

*Chamber of Commerce of U.S v. Bonta*
45 F.4th 1113 (9th Cir. 2022) ................................................................................... 4

*Chiron Corp. v. Ortho Diagnostics Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) .................................................................................. 6

*Chong v. Fedex Office & Print Servs, Inc.*
No. 20-cv-06067-JSW, 2021 WL 4926497 (N.D. Cal. Aug. 4, 2021) ..................... 5

*Citizens Bank v. Alafabco, Inc.*
539 U.S. 52 (2003) ................................................................................................... 4

*City of Oakland v. Oakland Raiders*
Case No. 18-cv-07444-JCS, 2019 WL 3344624 (N.D. Cal. July 25, 2019) ........... 13

*First Family Fin. Servs., Inc. v. Fairley*
173 F. Supp. 2d 565 (S.D. Miss. 2001) ................................................................... 4

*Fisher v. A.G. Becker Paribas, Inc.*
791 F.2d 691 (9th Cir. 1986) .................................................................................. 16

*Glaude v. Macy's Inc.*
No. 12-5179-PSG, 2012 WL 6019069 (N.D. Cal. Dec. 3, 2012) ............................. 6

*GT Sec., Inc. v. Klastech GmbH*
No. 13-3090-JCS, 2014 WL 2928013 (N.D. Cal. June 27, 2014) ............................ 6

*Hajibekyan v. BMW of N. Am. LLC*
   839 F. App'x 187 (9th Cir. 2021)...................................................................... 13

*Martin v. Yasuda*
   829 F.3d 1118 (9th Cir. 2016) ........................................................................ 16

*McLaurin v. Russell Sigler, Inc.*
   155 F. Supp. 3d 1042 (C.D. Cal. 2016) ........................................................... 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
   473 U.S. 614 (1985) ........................................................................................ 18

*Morgan v. Sundance*
   142 S. Ct. 1708 (2022) .................................................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ....................................................................................... 7, 19

*Newirth v. Aegis Senior Cmtys, LLC*
   931 F.3d 935 (9th Cir. 2019) .......................................................................... 16

*Oxy-Health, LCC v. H2 Enterprise, Inc.*
   No. CV 18-4066-MWF, 2019 WL 6729646 (C.D. Cal. July 31, 2019).................. 13

*Ritza v. Int'l Longshoremen's & Warehousemen's Union*
   837 F.2d 365 (9th Cir. 1988) ............................................................................ 6

*Savage v. Glendale Union High Sch.*
   343 F.3d 1036 (9th Cir. 2003) ........................................................................... 7

*Sovak v. Chugai Pharm., Co.*
   280 F.3d 1266 (9th Cir. 2002) ........................................................................ 16

*Sparling v. Hoffman Constr. Co.*
   864 F.2d 635 (9th Cir. 1988) .......................................................................... 19

*Wagner v. Stratton Oakmont, Inc.*
   83 F.3d 1046 (9th Cir. 1996)....................................................................... 7, 18

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*
   497 F. App'x 740 (9th Cir. 2012)....................................................................... 7

*Yeomans v. World Fin. Grp. Ins. Agency*
   485 F. Supp. 3d 1168 (N.D. Cal. 2020) ............................................................. 5

**California Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*
   24 Cal. 4th 83 (2000)........................................................................ 8, 9, 10, 11

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

iii

Case No. 4:22-cv-05036-JST

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND COMPEL ARBITRATION

*Asmus v. Pac. Bell*
    23 Cal. 4th 1 (2000)..................................................................................................8

*Baltazar v. Forever 21, Inc.*
    62 Cal. 4th 1237 (2016)...........................................................................................9

*Boucher v. Alliance Title Co.*
    127 Cal. App. 4th 262 (2005)................................................................................14

*Craig v. Brown & Root, Inc.*
    84 Cal. App. 4th 416 (2002)....................................................................................8

*Div. Labor Law Enf't v. Transpacific Transp., Co.*
    69 Cal. App. 3d 268 (1977).....................................................................................8

*Fittante v. Palm Springs Motors, Inc.*
    105 Cal. App. 4th 708 (2003)............................................................................9, 10

*Garcia v. Pexco, LLC*
    11 Cal. App. 5th 782 (2017)..............................................................................14, 15

*Goonewardene v. ADP, LLC*
    6 Cal. 5th 817 (2019)..........................................................................................12, 13

*Graham v. Scissor-Tail, Inc.*
    28 Cal. 3d 807 (1981)..............................................................................................9

*Gravillis v. Coldwell Banker Residential Brokerage Co.*
    143 Cal. App. 4th 761 (2006)................................................................................18

*Harris v. Tap Worldwide, LLC*
    248 Cal. App. 4th 373 (2016)................................................................................19

*Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP*
    243 Cal. App. 4th 1 (2015)....................................................................................12

*Marenco v. DirecTV, LLC*
    233 Cal. App. 4th 1409 (2015)..............................................................................14

*Mendez v. Mid-Wilshire Health Care Ctr.*
    220 Cal. App. 4th 534 (2013)................................................................................18

*Molecular Analytical Sys. v. Ciphergen*
    186 Cal. App. 4th 696 (2010)...........................................................................18, 19

*Morris v. Redwood Empire Bancorp*
    128 Cal. App. 4th 1305 (2005)..............................................................................10

*Murphy v. Allstate Ins. Co.*
    17 Cal. 3d 937 (1976)............................................................................................12

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US)*
   LLC, 55 Cal. 4th 223 (2012) ............................................................... 7, 10

*Roman v. Superior Court (Fle-Kem, Inc.)*
   172 Cal. App. 4th 1462 (2009) ............................................................... 11

*Ronay Family Ltd. P'ship v. Tweed*
   216 Cal. App. 4th 830 (2013) ............................................................... 12

*Sanchez v. Carmax Auto Superstores Cal., LLC*
   224 Cal. App. 4th 398 (2014) ............................................................... 8, 9, 10

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

9 U.S.C. § 1 ............................................................................................... 1, 4

9 U.S.C. § 2 ............................................................................................... 1, 4, 6

9 U.S.C. § 3 ............................................................................................... 1

9 U.S.C. § 4 ............................................................................................... 1

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Assembly Bill 51 ............................................................................... 4

Cal. Bus. & Prof. Code § 17200 ............................................................... 4

Cal. Civ. Code § 1281.4 ............................................................................ 19

Cal. Civ. Code § 1550 ............................................................................... 8

Cal. Civ. Proc. Code § 1281 ..................................................................... 7

Cal. Lab. Code § 1102.5 ........................................................................... 4

Cal. Penal Code § 502 ............................................................................... 3

Cal. Stats. Chapter 711 ............................................................................. 4

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 22, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard, at the Oakland Courthouse of the United States District Court, Northern District of California, Courtroom 6 – 2nd Floor, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Jon S. Tigar, Defendants Illumina, Inc. ("Illumina") and Verinata Health, Inc. ("Verinata," and collectively with Illumina, "Defendants") will move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 9 U.S.C. §§ 2, 3, and 4 for an order dismissing Plaintiff Albert Mark Gold's ("Plaintiff") Complaint and compelling him to arbitrate the claims asserted in the Complaint or, in the alternative, staying the case pending arbitration.  Although this motion, in the interests of judicial efficiency, addresses only arbitration, Defendants reserve all rights to assert additional defenses, including under Rule 12(b), if the relief sought by this motion is not granted.

Defendants are entitled to an order dismissing the Complaint and compelling arbitration of Plaintiff's claims under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff signed and accepted a valid arbitration agreement requiring that he individually arbitrate all claims arising out of his employment with Illumina and its wholly owned subsidiary Verinata, and this dispute falls squarely within the scope of the arbitration language.  In the alternative to dismissal, Defendants seek an order staying the case pending arbitration.

Defendants' motion is based upon this Notice, the accompanying Memorandum of Points and Authorities in support thereof, the Declarations of Cliff Cunningham and Aaron J. Schu, and the exhibits attached thereto, the complete files and records of this action, any matters of which this Court may take judicial notice, and such other evidence or arguments as may be presented at or before the hearing on this motion.

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Albert Mark Gold ("Plaintiff") agreed to arbitrate any employment-related disputes with his former employer, Illumina, Inc. ("Illumina").  That arbitration agreement applies to all the claims alleged in this case, including those alleged against Illumina and its wholly-owned subsidiary, Verinata Health, Inc. ("Verinata," and collectively with Illumina, "Defendants").  Yet, when an employment-related dispute arose regarding Plaintiff's theft of documents from Defendants following the termination of his employment, including the initiation of an arbitration against Plaintiff, Plaintiff filed this lawsuit against Defendants.

The four corners of the arbitration agreement, the facts surrounding its signature, and the relevant case law applicable to a non-signatory like Verinata clearly establish that the arbitration agreement is valid and enforceable.  Thus, Defendants respectfully bring this motion and ask the Court to issue an order compelling Plaintiff to do what he agreed to do at the beginning of his employment—arbitrate any disputes—and dismiss this action.

### II.  BACKGROUND

**A.  Illumina, Inc. and Verinata Health, Inc.**

Illumina is a leading global developer, manufacturer, and marketer of tools and systems that analyze genetic variation and function.  Decl. of Cliff Cunningham ("Cunningham Decl.") ¶¶ 20-21.  Illumina's products and services catalyze disease research, drug discovery, and clinical lab test development.  *Id.* ¶ 20.  In addition to being one of the world's most innovative companies, Illumina is frequently honored as a model corporate citizen and employer, including being certified as a "Great Place To Work."

Verinata is a wholly-owned subsidiary of Illumina.  Compl. ¶ 3.

**B.  Plaintiff is Hired and Agrees to Arbitrate any Dispute**

Plaintiff began working for Illumina in March 2022 as Director, Clinical Pathology at its Foster City, California location.  Cunningham Decl. ¶ 14.  As set forth in the job description attached to Plaintiff's Complaint, Plaintiff was "responsible for oversight of [Defendants'] high complexity genetic testing CLIA certified laboratories from either [their] San Diego or Foster City

1   locations."  Compl. Ex. B.  Plaintiff's duties also included "[e]nsur[ing] CLIAS and CAP

2   compliance of services and products offered through Illumina Laboratory Services" and working

3   with laboratory leadership, marketing, and medical affairs "to identify and evaluate opportunities

4   for Illumina which leverage the clinical laboratory."  *Id.*

5         On February 11, 2022, as part of Plaintiff's onboarding process, Plaintiff, Illumina, and

6   "its current and future subsidiaries" entered into a mutual agreement to arbitrate all claims related

7   to Plaintiff's recruitment or employment with Illumina.  Cunningham Decl. ¶ 18; *id.* Ex. 5

8   ("Arbitration Agreement"); *see also* Compl. ¶ 10; *id.* Ex. C.

9         In signing the Arbitration Agreement, Plaintiff specifically agreed to use mandatory,

10  binding arbitration, instead of going to court, for any and all "disputes or claims that [he] could

11  otherwise pursue in court arising from or relating to [his] recruitment or employment with

12  [Illumina or its subsidiaries], or the termination of that employment."  Arbitration Agreement, at

13  1.  The Arbitration Agreement was not hidden from Plaintiff—it is a stand-alone document

14  specifically titled "**Arbitration Agreement**," in bold.  *Id.*  The Arbitration Agreement specifically

15  applies, refers to, and directs the applicant to, the JAMS Employment Rules & Procedures.

16  Arbitration Agreement, at 2; Decl. of Aaron J. Schu ("Schu Decl.") ¶ 6; *id.* Ex. 3.  Illumina agreed

17  to pay the arbitrator's fee and any other type of expense or cost that Plaintiff would not be required

18  to bear if he were to bring the dispute(s) or claim(s) in court, as well as any other expense or cost

19  unique to arbitration.  Arbitration Agreement, at 3.  Per the Arbitration Agreement, either party

20  may confirm an arbitration award and have judgment entered based upon it in any court having

21  jurisdiction.  *Id.* at 2.  The Arbitration Agreement could only be modified by a written agreement

22  signed by both parties.  *Id.* at 3.

23  **C.    Procedural Background**

24        On July 20, 2022, Illumina initiated arbitration against Plaintiff with JAMS, alleging

25  violations of California Penal Code § 502 and breach of contract arising out of Plaintiff's theft of

26  its confidential information.  Schu Decl. ¶ 3; Compl. Ex. E.

27        In or about early August 2022, Plaintiff's counsel requested that the venue of the

28  arbitration be moved to San Mateo, California rather than San Diego, California.  Schu Decl. ¶¶ 3-

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

4; *id.* Ex. 1.  Counsel for Illumina agreed to review the agreement and provide a response, but in the meantime, Plaintiff's counsel asked JAMS to dismiss the arbitration.  *Id.*

On August 18, 2022, Illumina requested JAMS move the arbitration to San Mateo, California, and on August 29, 2022, JAMS did so.  Schu Decl. ¶¶ 4-5; *id.* Exs. 1-2.

Despite actual knowledge of the Arbitration Agreement and pending arbitration, Plaintiff filed his Complaint in this Court on September 5, 2022.  *See First Family Fin. Servs., Inc. v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim in . . . court that one has contractually agreed to arbitrate"); *see also* Schu Decl. Ex. 4 (Plaintiff's refusal to arbitrate claims with Defendants).  Plaintiff's Complaint alleges four claims against Defendants:  (1) retaliation under California Labor Code § 1102.5; (2) unfair competition under California Business & Professions Code § 17200 *et seq.*; (3) wrongful termination in violation of public policy; and (4) breach of contract.  This motion followed.

## III.  ARGUMENT

Because the claims in this case are all subject to the valid, binding, mandatory, mutual Arbitration Agreement, Plaintiff must submit his claims to arbitration as a matter of law.

**A.     The Federal Arbitration Act Governs the Arbitration Agreement[1]**

As an initial matter, the Federal Arbitration Act ("FAA") governs the Arbitration Agreement.  The FAA applies to arbitration agreements "involving" interstate commerce.  9 U.S.C. §§ 1-2.  In acknowledging an "expansive congressional intent," the Supreme Court has concluded this section demands broad application of the FAA to contracts "affecting" interstate commerce.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995) (concluding FAA's "word 'involving' is broad"); *see, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of

---

[1] To the extent Plaintiff argues that California Assembly Bill 51, 2019 Cal. Stats. Ch. 711 ("AB 51") bars the enforcement of the Arbitration Agreement, that legislation is preliminarily enjoined. *See Chamber of Commerce of U.S v. Bonta*, 45 F.4th 1113 (9th Cir. 2022) (granting petition for rehearing and withdrawing prior opinion, 13 F.4th 766 (9th Cir. 2021)); *Chamber of Commerce of U.S. v. Becerra*, 438 F. Supp. 3d 1078 (E.D. Cal. 2020) (enjoining enforcement of AB 51).

1  the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest

2  permissible exercise of Congress' Commerce Clause power").

3         Whether the parties intended to affect interstate or international commerce is not controlling.

4  It is sufficient that the contract in fact affects interstate commerce.  *Allied-Bruce*, 513 U.S. at 281.

5         Here, Plaintiff's claims are encompassed in a valid contract involving interstate commerce.

6  Illumina, along with its wholly owned subsidiary Verinata, manufactures and sells innovative

7  technologies in the field of genetic variation and function, including sophisticated and cutting-

8  edge products in the fields of DNA and RNA analysis, and genetic sequencing technologies.

9  Compl. Ex. E ¶ 6.  These products and services are provided across the United States and

10  worldwide through Illumina's offices in various states and countries.  Cunningham Decl. ¶¶ 20-21.

11         Plaintiff cannot reasonably dispute that the Arbitration Agreement involves interstate

12  commerce.  As set forth in the job description attached to the Complaint, Plaintiff was, among

13  other things, "responsible for oversight of [Defendants'] high complexity genetic testing CLIA

14  certified laboratories from either [their] San Diego or Foster City locations."  Compl. Ex. B.

15  Plaintiff's duties also included "[e]nsur[ing] CLIAS and CAP compliance of services and products

16  offered through Illumina Laboratory Services" and working with laboratory leadership, marketing,

17  and medical affairs "to identify and evaluate opportunities for Illumina which leverage the clinical

18  laboratory."  *Id.*; *see also id.* Ex. D (discussing California and New York regulations); *id.* ¶ 14

19  ("Exhibit D is an exhaustive and detailed description of Illumina/Verinata's noncompliance with

20  multiple federal and state statutes and regulations . . . .").

21         Therefore, the Arbitration Agreement arises in a contract involving interstate commerce.

22  *See Yeomans v. World Fin. Grp. Ins. Agency*, 485 F. Supp. 3d 1168, 1177-78 (N.D. Cal. 2020)

23  ("Given there is no dispute that Associates are located throughout the United States, sells products

24  from companies in different states to customers in various states, market their products to

25  customers nationwide through online platforms, and recruit people (in states across the country) to

26  join WFG, this Court concludes that there is sufficient evidence that the relevant transactions

27  'involve commerce,' and therefore that the FAA applies . . . ."), *aff'd*, No. 20-16937, 2021 WL

28  5356537 (9th Cir. Nov. 17, 2021); *Chong v. Fedex Office & Print Servs, Inc.*, No. 20-cv-06067-

1    JSW, 2021 WL 4926497, at *4 n.3 (N.D. Cal. Aug. 4, 2021) (finding FAA governed because

2    "Plaintiff worked for FedEx whose business 'includes planning and facilitating the shipment of

3    goods and products throughout the United States"). As such, Plaintiff's claims fall within the

4    scope of the FAA.

5    **B.      An Action is Properly Dismissed When All Claims Are Subject to Arbitration**

6          An action is properly dismissed for lack of subject matter jurisdiction under Federal Rule

7    of Civil Procedure 12(b)(1) if all claims are arbitrable under the FAA. *Glaude v. Macy's Inc.*, No.

8    12-5179-PSG, 2012 WL 6019069, at *3 (N.D. Cal. Dec. 3, 2012) (noting that "the court loses its

9    subject matter jurisdiction over any claims subject to [an] arbitration clause"); *see also GT Sec.,*

10   *Inc. v. Klastech GmbH*, No. 13-3090-JCS, 2014 WL 2928013, at *17-18 (N.D. Cal. June 27, 2014)

11   ("a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally

12   sufficient mechanism to enforce an arbitration provision.").[2]

13         The FAA provides that a written provision in a "contract evidencing a transaction

14   involving commerce to settle by arbitration a controversy thereafter arising out of such contract . .

15   . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

16   for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA permits a "party

17   aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

18   agreement for arbitration [to] petition any United States district court . . . for an order directing

19   that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." *Id.* § 4. On

20   a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1)

21   whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

22   encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126,

23   1130 (9th Cir. 2000). If the Court is "satisfied that the making of the agreement for arbitration or

24

25   _____
     [2] Further, a motion to compel arbitration and stay proceedings stays Defendants' obligation to
26   respond to the Complaint until the Court determines whether arbitration is the proper forum. *E.g.,*
     *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988)
27   ("[F]ederal courts . . . traditionally have entertained certain pre-answer motions that are not
     expressly provided for by the rules."), *rev'd on other grounds in Albino v. Baca*, 747 F.3d 1162
28   (9th Cir. 2013) ; *In re Barney's, Inc.*, 206 B.R. 336, 341 (S.D.N.Y. 1997) ("Defendants are not in
     default because a motion to stay litigation is a pre-answer motion within the scope of Rule
     12(b).").

1    the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties

2    to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

3         The FAA reflects "both a 'liberal policy favoring arbitration' . . . and the 'fundamental

4    principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Conception*, 563 U.S.

5    333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

6    (1983)). Thus, "courts must place arbitration agreements on an equal footing with other

7    contracts." *Id.*

8         In ruling on a 12(b)(1) motion to dismiss, courts may look beyond the pleadings to resolve

9    factual disputes, and the burden is on the party opposing the motion to establish subject matter

10   jurisdiction (that is, the existence of non-arbitrable claims). *See Savage v. Glendale Union High*

11   *Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

12   **C.     The Arbitration Agreement is Valid and Binding**

13        In determining the existence of an agreement to arbitrate, courts looks to "general state-law

14   principles of contract interpretation, while giving due regard to the federal policy in favor of

15   arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

16        As long as an arbitration clause is not itself invalid under "generally applicable contract

17   defenses, such as fraud, duress, or unconscionability," it must be enforced according to its terms.

18   *Concepcion*, 563 U.S. at 339. Any doubts concerning the scope of arbitrable issues must be

19   resolved in favor of arbitration. *Mercury Constr. Corp.*, 460 U.S. at 24-25. Furthermore, courts

20   have consistently found the JAMS arbitration rules, which are what the parties agreed to here, to

21   be enforceable. *See, e.g.*, *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th

22   Cir. 2012).

23        In determining the validity of an arbitration agreement, courts apply California contract

24   law. *See* Cal. Civ. Proc. Code § 1281; *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US)*,

25   LLC, 55 Cal. 4th 223, 236 (2012). The party seeking arbitration bears the burden of proving the

26   existence of an arbitration agreement, and the party opposing the agreement bears the burden of

27   proving any defense to the contract. *Pinnacle*, 55 Cal. 4th at 236.

28   / / /

The Arbitration Agreement is valid and binding here because the parties mutually assented to its terms, it covers all the claims in Plaintiff's Complaint, and it is neither procedurally nor substantively unconscionable.

### 1.    Plaintiff and Illumina Entered Into an Enforceable Contract to Arbitrate

The Arbitration Agreement's clear terms and the facts surrounding its signature render it enforceable.  The elements necessary to form a contract are mutual assent (offer and acceptance) and consideration.  Cal. Civ. Code § 1550; *see Div. Labor Law Enf't v. Transpacific Transp., Co.*, 69 Cal. App. 3d 268, 275 (1977).  Consideration is shown by the employee's continued employment after the arbitration agreement is presented.  *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 15 (2000); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2002).

Plaintiff and Illumina freely entered into the Arbitration Agreement, indicating their consent to be mutually bound by its terms.  Arbitration Agreement, at 3; Cunningham Decl. ¶¶ 4-11, 17-19; *see also* Compl. ¶ 10 ("On February 11, 2022, plaintiff and Illumina . . . both executed a written arbitration contract . . . , a true and correct copy of which is attached to this complaint as Exhibit C.").  Illumina presented the Arbitration Agreement to Plaintiff, and he agreed to be bound by its terms when he signed it on February 11, 2022.  *Id.*  Illumina's onboarding process required Plaintiff to review and enter information on each form individually, including the Arbitration Agreement form.  Cunningham Decl. ¶¶ 4-11, 15-19.  He could take as much time as he wished to review the Arbitration Agreement.  *Id.* ¶ 10.  At the end of the session, Plaintiff was prompted to create the electronic signature and sign the individually reviewed onboarding forms, indicating his review of, and agreement to, each.  *Id.* ¶¶ 8, 18-19.  In return, Plaintiff was hired.  *Id.* ¶ 19.  These facts satisfy the offer, acceptance, and consideration requirements for contract formation.  Thus, the Arbitration Agreement is enforceable.

### 2.    The Arbitration Agreement is Fair and Consciable

If the essential elements of a contract are present, the agreement shall be enforced unless it is unconscionable.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 402 (2014).  To be unenforceable, a party must prove the arbitration agreement is *both* procedurally and substantively

1 unconscionable.  *Armendariz*, 24 Cal. 4th at 114.  Plaintiff can do neither.

2           **a.**       **There is No Procedural Unconscionability**

3       Procedural unconscionability focuses on two elements—oppression and surprise due to

4 unequal bargaining power.  *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016); *Fittante v.*

5 *Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 722-23 (2003).  An otherwise enforceable

6 arbitration agreement is not unenforceable because it is presented on a "take-it-or-leave-it-basis";

7 the agreement must contain some surprise or some additional "unduly oppressive" aspects.

8 *Carmax*, 224 Cal. App. 4th at 402-03; *Fittante*, 105 Cal. App. 4th at 721-22 ("Describing a

9 contract as one of adhesion does not, however, affect its enforceability.  Rather, an adhesion

10 contract remains fully enforceable unless (1) the provision falls outside the reasonable

11 expectations of the weaker party, or (2) the provision is unduly oppressive or unconscionable.").

12 Stated differently, an adhesion contract is "fully enforceable according to its terms . . . unless

13 certain other factors are present which, under the established legal rules—legislative or judicial—

14 operate to render it otherwise."  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-20 (1981).

15       *Carmax* is particularly illustrative.  Even though the court found the employer presented its

16 employee with an arbitration agreement on a "take-it-or-leave-it" basis, the court still enforced the

17 agreement because there was no oppression or surprise.  *Carmax*, 224 Cal. App. 4th at 403.

18 Critically, the agreement "was not hidden, but prominently featured as part of the employment

19 application."  *Id.*

20        Here, the Arbitration Agreement was not hidden from Plaintiff, and he had as much time

21 as he wished to review it.  Cunningham Decl. ¶ 10.  Plaintiff was not required to complete the

22 onboarding process in one sitting.  *Id.* ¶¶ 3, 9, 10.  He also could have saved any or all of the

23 onboarding forms (including the Arbitration Agreement) as PDF documents and/or printed them.

24 *Id.*  Plaintiff also could have elected to not complete or sign the forms.  *Id.*  Illumina presented the

25 Arbitration Agreement to him as part of his onboarding process, and the relevant section is labeled

26 (in bold) as "**Agreement to Arbitrate Certain Disputes and Claims**."  *Id.* ¶¶ 18-19; Arbitration

27 Agreement, at 1.  Further, the Arbitration Agreement contains a paragraph entitled "**Knowing and**

28 **Voluntary Agreement**" (in bold) immediately above the signature line certifying that Plaintiff

had been advised to consult with an attorney of his choosing before signing the Arbitration

Agreement, had the opportunity to negotiate the terms of the Arbitration Agreement, and that he

agreed he had "read this Agreement carefully and understands that by signing it, [he] is waiving

all rights to a trial or hearing before a judge or jury with respect to any and all disputes and claims

regarding [his] employment with [Illumina] or the recruitment to or termination thereof."

Arbitration Agreement, at 3.  Simply put, there is no possible procedural unconscionability.

### b.       There is No Substantive Unconscionability

The Arbitration Agreement is also enforceable because it is not substantively

unconscionable.  Substantive unconscionability focuses on overly harsh or one-sided results.

*Armendariz*, 24 Cal. 4th at 114; *Carmax*, 224 Cal. App. 4th at 402.  To prove the Arbitration

Agreement is substantively unconscionable, Plaintiff must prove its terms are so extreme or unfair

so as to "shock the conscience."  *Pinnacle*, 55 Cal. 4th at 248; *see also Morris v. Redwood Empire

Bancorp*, 128 Cal. App. 4th 1305, 1322-23 (2005) ("'With a concept as nebulous as

"unconscionability" it is important that courts not be thrust in the paternalistic role of intervening

to change contractual terms that the parties have agreed to merely because the court believes the

terms are unreasonable.  The terms must shock the conscience.'").

Specifically, the California Supreme Court allows for arbitration of employment-related

disputes if the agreement:  "(1) provides for neutral arbitrators, (2) provides for more than minimal

discovery, (3) requires a written award, (4) provides for all of the types of relief that would

otherwise be available in court, and (5) does not require employees to pay either unreasonable

costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."

*Armendariz*, 24 Cal. 4th at 102; *see also Fittante*, 105 Cal. App. 4th at 716 (agreement enforceable

when it is equally applicable to both parties).

Here, the Arbitration Agreement meets all of the *Armendariz* requirements and is a model,

enforceable arbitration agreement.  It is not one-sided:  it expressly applies equally to Plaintiff and

Illumina (and Verinata, as "Company" is defined).[3]  Arbitration Agreement, at 1 ("The Company

---

[3] The agreement's bilaterality is also evident by the fact that Illumina has a pending arbitration
against Plaintiff Gold arising from his data theft.  *See* Compl. Ex. E.

1   and Employee mutually agree to submit to binding arbitration . . . .").  It requires Illumina to pay

2   the arbitrator's fee and any other type of expense or cost that Plaintiff would not be required to

3   bear if he were to bring the dispute(s) or claim(s) in court, as well as any other expense or cost that

4   is unique to the arbitration.  *Id.* at 3.  It requires the arbitration to be governed by the JAMS

5   employment dispute resolution rules, which are often thought of as the gold standard for

6   arbitration rules.  *Id.* at 2.  These rules themselves provide for a neutral arbitrator, as well as the

7   same discovery rights and relief that the parties would be entitled to in a court of law, and a

8   written award.  Schu Decl., Ex. 3.  Thus, the Arbitration Agreement easily satisfies the

9   *Armendariz* requirements and is enforceable.  *See* 24 Cal. 4th at 102.

10                    **c.      The Court May Strike Any Unenforceable Clause**

11          Even if the Court determines that any part of the Arbitration Agreement is unenforceable,

12  it should modify or sever the offending portion.  *Armendariz*, 24 Cal. 4th at 121-24.  A court is

13  particularly apt to sever an objectionable clause where the parties have agreed in the arbitration

14  agreement to modify or interpret any clause found to be invalid or unenforceable.  *E.g.*, *McLaurin*

15  *v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042, 1047-48 (C.D. Cal. 2016).  Indeed, absent a showing

16  that the parties' arbitration agreement is "permeated" with illegality, which it clearly is not,

17  severance or modification is the favored approach.  *See Roman v. Superior Court (Fle-Kem, Inc.)*,

18  172 Cal. App. 4th 1462, 1477-78 (2009).

19          Here, Plaintiff and Illumina specifically agreed that:

20              …if any term or portion of this Agreement shall, for any reason, be held to be
                invalid or unenforceable or to be contrary to public policy or any law, then the
21              remained of the Agreement shall not be affected by such invalidity or enforceability
                but shall remain in full force and effect, as if the invalid or unenforceable term or
22              portion thereof had not existed with this Agreement.

23  Arbitration Agreement, at 3.  Thus, in the event the Court finds any provision unenforceable, the

24  Court should modify or remove the offending provision and enforce the parties' Arbitration

25  Agreement.

26          **3.      Verinata May Compel Arbitration**

27          Plaintiff does not appear to dispute that the Arbitration Agreement is between him,

28  Illumina, and Verinata.  Compl. ¶ 35.  However, if Plaintiff argues that Verinata is not a signatory

to the Arbitration Agreement, it may still compel arbitration based on third-party beneficiary, equitable estoppel, and agency principles.

A non-party may enforce an arbitration agreement in some cases "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contractual through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  Under California law, "'[n]onsignatory defendants may enforce arbitration agreements 'where there is sufficient identity of parties.'  Enforcement is permitted where the nonsignatory is the agent for a party to the arbitration agreement, or the nonsignatory is a third party beneficiary of the agreement.  In addition, a nonsignatory may enforce an arbitration agreement under the doctrine of equitable estoppel." *Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP*, 243 Cal. App. 4th 1, 8-9 (2015).

### a.   Verinata is an Intended Third-Party Beneficiary of the Arbitration Agreement

"A third party beneficiary may enforce a contract expressly made for his benefit.  And although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him." *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 943 (1976).  Further, "a third party beneficiary of an arbitration agreement may enforce it." *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013).

The California Supreme Court has established a three-part test for determining a third-party beneficiary, as follows:

> [The Court shall examine] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its [ ] action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 829-30 (2019).  Courts determine whether these elements are met by "carefully examine[ing] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to." *Id.* at 829.

1    Here, Verinata, a wholly-owned subsidiary of Illumina, is referenced throughout the

2    Arbitration Agreement.  Arbitration Agreement, at 1 ("This Mutual Arbitration Agreement . . . is

3    entered into between Illumina, Inc. . . . , or any of its current and future subsidiaries . . . ('the

4    Company') and the employee named below . . . ."); *see also* Compl. ¶ 35 ("Illumina and Verinata

5    have waived their right as a matter of law to compel plaintiff to arbitrate employment disputes

6    purportedly described in the arbitration agreement.").  Thus, Verinata would "in fact benefit from

7    the contract" and the parties have a "motivating purpose" that benefits Verinata.  *See Hajibekyan*

8    *v. BMW of N. Am. LLC*, 839 F. App'x 187, 188 (9th Cir. 2021) (contract at issue expressly defined

9    arbitrable disputes as including affiliates of the assignee); *see also City of Oakland v. Oakland*

10    *Raiders*, Case No. 18-cv-07444-JCS, 2019 WL 3344624, at *14 (N.D. Cal. July 25, 2019)

11    (describing the benefit in fact element as a "relatively low hurdle"); *Oxy-Health, LCC v. H2*

12    *Enterprise, Inc.*, No. CV 18-4066-MWF (SSx), 2019 WL 6729646, at *3 (C.D. Cal. July 31, 2019)

13    ("As a corporation solely owned by Mr. Yeh, H2 would obviously directly benefit from the

14    Agreement because H2's operation was rooted in Mr. Yeh's work for Oxy-Health.").

15    Moreover, as set forth in Plaintiff's Complaint, Illumina's January 27, 2022 offer letter (at

16    paragraph 7 and Exhibit A) was made "on behalf of Verinata Health, Inc," further demonstrating

17    that the signatories of the Arbitration Agreement possessed a "motivating purpose" to benefit

18    Verinata.  *See also id.* Ex. A ("this offer of employment with Verinata Health, Inc.").  For this

19    reason, permitting Verinata to compel arbitration would also be "consistent with the objectives of

20    the contract and the reasonable expectation of the contracting parties."  *Goonewardene*, 6 Cal. 5th

21    at 830; *Oxy-Health.*, 2019 WL 6729646, at *3 ("given Oxy-Health's knowledge of Mr. Yah and

22    H2, as well as their interconnected nature, H2's ability to bring a claim arising from the contract is

23    consistent with the objectives and reasonable expectations of the Agreement.").

24    As such, Verinata is a third-party beneficiary of the Arbitration Agreement and may

25    enforce it as a non-signatory.

26    / / /

27    / / /

28    / / /

b.      **Equitable Estoppel Permits Verinata to Invoke the Arbitration Agreement Even Though It is Not a Signatory**

Equitable estoppel is an exception to the general rule that only signatories may invoke an arbitration agreement. *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 785 (2017) (*citing Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 267 (2005)). Under equitable estoppel, "'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in an intertwined with" the underlying contract obligations.'" *Id.* at 787. It applies in cases like this one where the claims are "'based on the same facts and are inherently inseparable from the arbitrable claims against signatory defendants.'" *See id.* at 786-87.

In *Garcia*, the plaintiff was employed by a temporary staffing company pursuant to an employment contract that included a mandatory arbitration agreement. *Garcia*, 11 Cal. App. 5th at 784. The staffing company assigned the plaintiff to work at a third-party company (like Verinata), but that company was not a signatory to the agreement. *Id.* The third-party company was permitted to compel arbitration after the plaintiff filed a lawsuit related to the plaintiff's employment with the staffing company. *Id.* at 788. Importantly, the court noted that the plaintiff's claims were intimately founded and intertwined with his employment relationship with the staffing company, which was governed by the employment agreement compelling arbitration. *Id.* at 787; *see also Marenco v. DirecTV, LLC*, 233 Cal. App. 4th 1409, 1419 (2015) ("Although DirecTV was not a signatory to the employment arbitration agreement between Marenco and 180 Connect, there is no doubt that the agreement formed one of the terms of Marenco's employment. When Marenco sued DirecTV for violating the terms of his employment, DirecTV was entitled to invoke the arbitration clause to compel Marenco, as a signatory plaintiff, to arbitrate his claims pursuant to the employment agreement.").

Like the claims in *Garcia*, Plaintiff's claims are intimately founded and intertwined with his employment relationship with Illumina, which was governed by the Arbitration Agreement. Indeed, all of his claims are directly related to that employment. Further, Plaintiff does not distinguish between Illumina and Verinata with regard to the basis for liability. To the contrary,

1    his claims are based on the same facts and circumstances, alleging in each claim that

2    "Illumina/Verinata" retaliated against him and violated public policy.  *E.g.*, Compl. ¶¶ 8, 11, 16,

3    21, 25, 35.  Accordingly, Verinata can also compel Plaintiff to arbitration on this basis.

4                    **c.      The Agency Exception Permits Verinata to Invoke the Arbitration**

5                            **Agreement Even Though It is Not a Signatory**

6            Like equitable estoppel, agency is an exception to the general rule that only a party to an

7    arbitration agreement may enforce it.  *Garcia*, 11 Cal. App. 5th at 788.  A non-signatory may

8    enforce an arbitration agreement under the agency exception "when a plaintiff alleges a defendant

9    acted as an agent of a party to an arbitration agreement."  *Id.*

10           Here, Illumina is a signatory and Plaintiff alleges Verinata is a "wholly-owned subsidiary

11   of [Illumina]."  Compl. ¶ 4.  Further, Illumina and Verinata are alleged to have acted as agents of

12   one another.  *E.g.*, *id.* ¶ 7 ("On January 27, 2022, Illumina 'on behalf of Verinata Health, Inc.'

13   offered employment to plaintiff . . . ."); *id.* ¶ 8 ("On January 28, 2022, plaintiff accepted the offer .

14   . . from Illumina and/or Verinata."); *id.* ¶ 21 ("Notwithstanding the requirement of the arbitration

15   agreement drafted by Illumina/Verinata which Illumina/Verinata required to be signed . . . .").

16           Thus, because Plaintiff has alleged Illumina was acting on behalf of Verinata (and vice-

17   versa), the agency exception applies and Verinata may compel arbitration based on that theory as

18   well.

19           **4.      Defendants Have Not Waived Their Right to Compel Arbitration**

20           In his Complaint, Plaintiff puzzlingly asserts Defendants have waived their right to compel

21   arbitration because "Illumina did not initiate the arbitration proceeding 'in the county in which the

22   Employee was employed by the Company at the time the arbitrable dispute(s) or claim(s) arose.

23   That resulted in a strike list of proposed arbitrators being submitted to the parties which proposed

24   arbitrators were all retired San Diego judicial officers or San Diego lawyers."  Compl. ¶ 21; *see*

25   *also id.* ¶ 35 ("By initiating an arbitration proceeding against plaintiff in San Diego County and

26   thereafter failing and refusing to take necessary action to move it to the San Francisco office of

27   JAMS, the defendants breached a material term and condition of the arbitration agreement

28

1  between them and plaintiff.").[4]

2       The "waiver of the right to compel arbitration is a rule for arbitration, such that the FAA

3  controls." *Sovak v. Chugai Pharm., Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002).  "The right to

4  arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124

5  (9th Cir. 2016).  "Any examination of whether the right to compel arbitration has been waived

6  must be conducted in light of the strong federal policy favoring enforcement of arbitration

7  agreements." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  The

8  Supreme Court recently held that a showing of prejudice is not required, and that the waiver

9  inquiry should focus on the waiving party's conduct, that is, did the waiving party "knowingly

10  relinquish the right to arbitrate by acting inconsistently with that right?" *Morgan v. Sundance*, 142

11  S. Ct. 1708, 1714 (2022).

12       When analyzing waiver, courts consider the totality of the parties' actions.  *Newirth v.*

13  *Aegis Senior Cmtys, LLC*, 931 F.3d 935, 941 (9th Cir. 2019).  "Applying this holistic approach, we

14  have generally asked whether a party's actions 'indicate a conscious decision . . . to seek judicial

15  judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to

16  arbitrate.'" *Id.*

17       Illumina (but not Verinata) initiated arbitration on July 20, 2022.  Compl. ¶ 20; *id.* Ex. E.

18  On August 18, 2022, after Plaintiff's counsel's request and before an arbitrator had been

19  appointed, Illumina agreed to move the venue of the arbitration to San Mateo.  Schu Decl. ¶¶ 3-4;

20  *id.* Ex. 1 ("Illumina, Inc. requests the location of the arbitration b[e] changed to San Mateo.").

21  Defendants were first served with the Complaint on September 6, 2022.  Other than this motion,

22  Defendants have filed no other pleadings with the Court.

23        As set forth above, Plaintiff argues that Defendants waived their right to arbitrate by

24  initiating the arbitration in San Diego, rather than San Mateo.  However, this does not, in any way,

25  convey an intent on the part of Illumina (much less Verinata, who did not initiate the arbitration)

26

27  ──────────────
[4] Plaintiff's position is particularly puzzling given his refusal to substantively meet and confer on
28  his waiver argument or provide any authority in support of his position.  *See* Schu Decl. ¶ 7 & Ex. 4.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

16                              Case No. 4:22-cv-05036-JST
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND COMPEL ARBITRATION

1    to litigate the merits of the arbitrable claims in court—quite the opposite, it expressed an intent to

2    arbitrate those claims.

3          Regardless, Plaintiff's argument in support of waiver (as pleaded in the Complaint) is not

4    supported by the facts.  As an initial matter, the provision at issue calls for the arbitration to "take

5    place in the county in which [Plaintiff] was employed by [Illumina and Verinata] at the time the

6    arbitrable dispute(s) or claim(s) arose."  Arbitration Agreement, at 2; *see also* Compl. ¶ 12 (same);

7    *id.* Ex. C.  It says nothing about "initiating arbitration" in a certain location, as Plaintiff alleges.

8    *See* Compl. ¶ 21 ("Illumina did not initiate the arbitration proceeding [in San Mateo].").  It only

9    requires that the arbitration take place in San Mateo, which, as set forth in Exhibit 2 to the Schu

10   Declaration, it will.  To the extent Plaintiff argues the arbitration was "not moved" because "the

11   arbitration proceedings would continue to be run and administered out of JAMS San Diego office

12   by the same case manager as originally assigned to the San Diego proceeding (for example,

13   Complaint ¶¶ 22, 35), he ignores the plain language of the Arbitration Agreement, which contains

14   no such requirements.  *See* Arbitration Agreement.

15         And even if the Arbitration Agreement required Defendants to initiate arbitration in San

16   Mateo, Defendants agreed—days after Plaintiff's request—to move the site of the arbitration to

17   San Mateo.  Schu Decl. ¶¶ 4-5; *id.* Ex. 2.  Contrary to Plaintiff's allegations, JAMS subsequently

18   issued a "Supplemental Strike List" setting the location of the arbitration to "San Mateo, CA" and

19   providing a list of prospective arbitrators with offices in that area, including eight with presences

20   in the San Francisco/the Bay Area, one with a "national" presence, and one "outside Sacramento."

21   Schu Decl. ¶¶ 4-5; *id.* Ex. 2.

22         Nor, contrary to Plaintiff's assertion, does the agreement call for "San Francisco area

23   arbitrators."  Rather, in the event the parties cannot agree on an arbitrator, "the selection shall

24   proceed according to the procedures set forth in Rule 15 of JAMS Employment Arbitration Rules

25   & Procedures such that an Arbitrator will ultimately be appointed by JAMS."  Arbitration

26   Agreement; Compl. Ex. C.  JAMS Rule 15 provides, in relevant part:

27         (b) If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of
           at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten
28         (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide

1

2

each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

3

4

Schu Decl. Ex. 3, at 10.  Thus, whether JAMS has provided a "strike list of proposed San

5

Francisco Bay Area arbitrators" is immaterial.  Compl. ¶ 22.

6

Put simply, this is not the type of action that could possibly support a waiver of the right to

7

arbitrate.  *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL 6014438, at

8

\*4-6 (N.D. Cal. Dec. 2, 2011) (denying waiver argument where defendants "substantially

9

complied with the procedures for initiating arbitration in . . . agreement" by complying with "two

10

of three requirements").

11

**D.      The Arbitration Agreement Applies to All Claims Related to Plaintiff's Employment**

12

When determining the arbitrability of an issue under the FAA, the Court must also

13

determine whether the parties' agreement to arbitrate reached stated issues.  *Mitsubishi Motors*

14

*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Mendez v. Mid-Wilshire Health*

15

*Care Ctr.*, 220 Cal. App. 4th 534, 541 (2013) ("[I]n ruling on a motion to compel arbitration, the

16

court must . . . determine whether the parties actually agreed to arbitrate the dispute.").

17

In determining the scope of an arbitration clause, the court applies state law principles of

18

contract interpretation "while giving due regard to the federal policy in favor of arbitration by

19

resolving ambiguities . . . in favor of arbitration."  *Wagner*, 83 F.3d at 1049.

20

An arbitration agreement's scope is determined by the agreement itself, and will be

21

enforced unless it cannot be interpreted to cover the asserted dispute.  *Gravillis v. Coldwell Banker*

22

*Residential Brokerage Co.*, 143 Cal. App. 4th 761, 771 (2006).  The party opposing arbitration

23

bears the burden of demonstrating that an arbitration clause could not cover the dispute.

24

*Molecular Analytical Sys. v. Ciphergen*, 186 Cal. App. 4th 696, 705 (2010).

25

Here, by its terms, the relevant section in the Arbitration Agreement, titled "**Agreement to**

26

**Arbitrate Certain Disputes and Claims**," states that it covers "any and all disputes or claims that

27

[Plaintiff] could otherwise pursue in court arising from or relating to [his] recruitment to or

28

arbitration with [Defendants], or the termination of that employment."  Arbitration Agreement, at

1. Moreover, the Arbitration Agreement specifically states that its scope includes, but is not limited to "claims for . . . breach of contract, . . . wrongful termination of employment, violation of public policy[, and] . . . unfair business practices." *Id.* Thus, it expressly reaches all of the claims in the Complaint. *See Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373 at 391 (2016) (granting motion to compel arbitration of discrimination and wrongful termination claims).

**E.     This Case Should Dismissed or, in the Alternative, Stayed**

Section 3 of the FAA requires courts to stay actions pending arbitration. 9 U.S.C. § 3; *see also* Cal. Civ. Code § 1281.4 (same). However, the Court has discretion to dismiss the action in its entirety, rather than stay the action, if all of the claims asserted in Plaintiff's Complaint must be submitted to arbitration. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

For the reasons set forth above, all of Plaintiff's claims must be arbitrated. Therefore, Defendants respectfully request the Court exercise its discretion and dismiss Plaintiff's claims without prejudice. In the alternative, Defendants request the Court stay the case pending arbitration.

## IV.  CONCLUSION

For all of the reasons set forth above, Illumina and Verinata respectfully request the Court order this case to arbitration and dismiss the case without prejudice or, in the alternative, stay the case pending arbitration.

Dated:  September 27, 2022                 PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP


By:     ___/s/ Aaron J. Schu_____
        E. JOSEPH CONNAUGHTON
        AARON J. SCHU
        Attorneys for Defendants Illumina, Inc. and
        Verinata Health, Inc.