E. JOSEPH CONNAUGHTON (SBN 166765)
jconnaughton@paulplevin.com
AARON J. SCHU (SBN 299701)
aschu@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendants Illumina, Inc.
and Verinata Health, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ALBERT MARK GOLD,<br><br>  Plaintiff,<br><br>  v.<br><br>ILLUMINA, INC., a Delaware corporation, and VERINATA HEALTH, INC. a Delaware Corporation,<br><br>  Defendants. | Case No. 4:22-cv-05036-JST<br><br>**DECLARATION OF CLIFF CUNNINGHAM IN SUPPORT OF DEFENDANTS ILLUMINA, INC. AND VERINATA HEALTH, INC.'S RULE 12(b)(1) MOTION TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING ARBITRATION**<br><br>Date:        December 22, 2022<br>Time:       2:00 p.m.<br>Courtroom: 6 – 2nd Floor<br>Judge:      Hon. Jon S. Tigar |

I, Cliff Cunningham, declare as follows:

1. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. I am HR Senior Director, People Technology & Analytics for Illumina, Inc. ("Illumina"). I have been employed by Illumina for almost seven years. I have been Senior Director, People Technology & Analytics for approximately one year. Prior to this role, I was HR Director of People Operations & Technology from October 2018 until July 2021. Based on my prior role as Director of People Operations & Technology, I am familiar with the onboarding process used by all Illumina entities, as well as Illumina's general business and locations. I am also familiar with the specific forms that Plaintiff Albert Mark Gold ("Gold") completed, and I have reviewed the data and documents for Gold's onboarding process. I make this declaration in support of Illumina and Verinata Health, Inc.'s ("Verinata") Motion to Dismiss and Compel Arbitration based on my personal knowledge of the facts as set forth in this declaration.

3. In July 2017, Illumina began using its current online onboarding process. The onboarding process allows applicants to review, complete, and sign Illumina hiring forms electronically, at their convenience, without time pressure. As of July 2017, this process has been Illumina's regular method for onboarding all new employees, including Gold.

4. Illumina's onboarding process is a standardized process through which applicants can complete an Arbitration Agreement, Form W-4, Employee Handbook Acknowledgment, Direct Deposit pay options, and other hiring and onboarding forms.

5. In order to start the onboarding process, which occurs after the applicant receives an employment offer, an Illumina representative manually invites the applicant to begin the onboarding process by generating an email that is delivered to the email address provided by the applicant with instruction on how to login to the onboarding program. This email contains a unique user ID and password for the applicant to use. The applicant must access his or her email account to obtain his or her unique user ID and password.

6. The applicant clicks on a link in the invitation email to initiate the onboarding program and enters his or her unique user ID and password. Once logged in, the applicant is taken

to the onboarding process screen. The applicant must enter all required information on each screen before proceeding to the next screen. The onboarding process screen requires the applicant to enter his or her Social Security Number ("SSN"). The applicant may not proceed past the employment application screen without entering a valid (9-digit) number for the SSN.

7. An applicant must review and execute certain forms, including the Arbitration Agreement, as part of the onboarding process. The process for electronically signing the forms requires an applicant to physically check acknowledgement boxes as the applicant proceeds through the onboarding process reviewing forms, and then to click a button to apply the applicant's electronic signature to the forms. The onboarding process includes on-screen instructions describing the electronic signature process.

8. The onboarding process specifically requires that the applicant review, acknowledge and enter information on each form individually. At the end of the session, the applicant is prompted to create the electronic signature and sign the group of forms. The applicant creates the signature using a mouse or his or her finger and then clicks a box to apply the signature to the group of forms he or she just completed. The program then applies the applicant's signature to the forms as the applicant's electronic signature. The onboarding process is complete when the applicant has reviewed, completed, and electronically acknowledged his or her review of, and agreement to, the forms.

9. At any time, the applicant may save the information and log out of the onboarding program. The applicant may then log back in later using his or her unique user ID and password to finish the onboarding process.

10. Additionally, the applicant may save any or all of the forms as a PDF document or print those forms. Further, there is no time limitation for completing the overall onboarding process and the applicant may take as much time as he or she wishes to review, acknowledge and agree to the forms. An applicant also has the option to end the onboarding process at any point if he or she does not wish to complete or sign all of the required forms.

11. If an applicant has any questions about the forms or wishes to begin the onboarding process again after ending it, he or she may contact the Illumina representative who initiated the

onboarding process.

12. Data regarding an applicant's submission of the forms and copies of an applicant's electronically signed documents are contemporaneously created on and retrievable through Illumina's Workday human capital management ("HCM") system.

13. Through a review of Illumina's business records, which includes Illumina's Workday HCM system described above, I reviewed information regarding Gold.

14. Gold began working for Illumina as Director, Clinical Pathology at its Foster City, California location on or about March 7, 2022.

15. Illumina's regularly maintained business records kept in the ordinary course of business related to employee onboarding reveal that Illumina's representative manually invited Gold to the online onboarding process by generating an email with instructions and a unique login ID and password to the email address Gold provided to Illumina in connection with his application for employment. Specifically, based on my review of the email coordinating the onboarding process for Gold, Illumina sent the onboarding invitation email to Gold on February 9, 2022.

16. Illumina's regularly maintained business records kept in the ordinary course of business show that Gold began the onboarding process for employment as a Director, Clinical Pathology at approximately 10:02 AM on February 9, 2022, using the online onboarding program by logging in with the unique user ID and password provided to him.

17. Gold reviewed and completed each form individually as part of the onboarding process and he applied his electronic signature to each of the documents in Illumina's onboarding process as described above.

18. On February 11, 2022, as part of Gold's onboarding process, Gold and Illumina (and its current and future subsidiaries) entered into a mutual agreement to arbitrate all claims related to Gold's employment with Illumina. Specifically, Illumina's regularly maintained business records kept in the ordinary course of business show that Gold electronically signed the Arbitration Agreement on February 11, 2022.

19. A true and correct copy of the Arbitration Agreement signed by Gold that is stored in Illumina's electronic data management system is attached hereto as **Exhibit 5**. Gold

successfully completed the onboarding process at approximately 11:33 AM on March 8, 2022. In return, Gold was hired by Illumina.

20. Illumina is a leading global developer, manufacturer, and marketer of tools and systems that analyze genetic variation and function. Illumina's products and services—which are provided across the United States and worldwide—catalyze disease research, drug discovery, and clinical lab test development.

21. Illumina is headquartered in San Diego, California and has offices and manufacturing facilities across the country and globe, including Wisconsin, Maryland, Germany, France, China, and Singapore, among others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of September, 2022, at San Diego, California.

*Cliff J Cunningham*
Cliff Cunningham

# Exhibit 5



# Arbitration Agreement

This Mutual Arbitration Agreement ("Agreement") is entered into between Illumina, Inc., a Delaware corporation, or any of its current and future subsidiaries, parents, affiliates, successors or assigns ("the Company") and the employee named below ("Employee").

**Agreement to Arbitrate Certain Disputes and Claims**

The Company and Employee mutually agree to submit to binding arbitration any and all disputes or claims that we could otherwise pursue in court arising from or relating to Employee's recruitment to or employment with the Company, or the termination of that employment, including claims against any current or former agent or employee of the Company, whether the disputes or claims arise in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following:

- claims for fraud, misrepresentation, promissory estoppels, fraudulent inducement of contract or breach of contract, whether such alleged contract or obligation be oral, written, or express or implied by fact of law;

- claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, interference with contract or prospective economic advantage, defamation, unfair business practices, invasion of privacy;

- claims for non-payment or incorrect payment of wages, commissions, bonuses, severance, employee fringe benefits, or stock options.

In addition to our agreement to arbitrate all disputes, we agree that either party may seek injunctive or other provisional relief from a court of competent jurisdiction relating to any dispute covered by this Agreement as provided in the California Arbitration Act.

We understand and agree that the arbitration of the disputes and claims covered by this Agreement shall be the sole and exclusive mechanism for resolving any and all existing and future disputes or claims arising out of Employee's recruitment to or employment with the Company or the termination thereof, except for Employee's claims for workers' compensation benefits, unemployment insurance, state or federal disability insurance, and for any injunctive or provisional relief (as provided by the California Arbitration Act).

**Waiver of Right to Trial**

We understand and agree that the arbitration of disputes and claims under this Agreement shall be instead of a trial before a judge or jury. We understand and agree that, by signing this Agreement, we are expressly waiving, to the fullest extent permitted by law, any and all rights to a trial before a judge or jury hearing before an adjudicative agency, regarding any disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement. This Agreement does not apply to wage claims brought before the California Department of Labor Standards Enforcement, but does apply to any such claims that are appealed to a Superior Court or similar court of competent jurisdiction.

**No Consolidation of Claims**

Employee and the Company agree that neither Employee nor the Company shall be entitled to join or consolidate in arbitration any claim by or against other current or former Illumina employees, nor bring in arbitration any claim as a representative or member of a class.  The parties agree that this arbitration provision shall be interpreted as broadly as permitted under applicable law and includes, but is not limited to, claims for fraud, breach of contract, wrongful termination, defamation, discrimination, harassment, misrepresentation, infliction of emotional distress, and claims related to compensation, and wages and hours.

**Arbitration Procedures; Final and Binding Award**

The arbitration shall be conducted by a single neutral Arbitrator in accordance with the JAMS Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness; provided, however, to the extent that any of the JAMS Employment Arbitration Rules & Procedures or anything in this Agreement conflicts with any arbitration procedures required by applicable law, the arbitration procedures required by the applicable law shall govern.  The Rules are available at https://www.jamsadr.com/rules-employment.  The Company will provide a printed copy of the Rules to the Employee at the Employee's request.

Selection of the Arbitrator shall proceed as follows: First, the parties will attempt to agree on an Arbitrator affiliated with either JAMS or Judicate West.  The parties agree that the Arbitrator selected shall be a retired judge.  In the event that an Arbitrator from Judicate West is selected, pursuant to JW Commercial Arbitration Rules Rule No. 2.A.2, the Arbitrator will apply JAMS Employment Arbitration Rules & Procedures unless the parties agree otherwise.  If the parties cannot agree on an Arbitrator, the selection process shall proceed according to the procedures set forth in Rule 15 of JAMS Employment Arbitration Rules & Procedures such that an Arbitrator will ultimately be appointed by JAMS.

The Arbitrator shall permit both parties to engage in reasonable pre-hearing discovery to obtain information to prosecute or defend the asserted claims.  In addition, the Arbitrator shall permit either party to submit, pursuant to a briefing schedule dictated by the Arbitrator, motions that would otherwise be permitted if the matter were pursued in court.  The Arbitrator shall issue a written ruling on any such motion that sets forth the essential bases for such ruling.

Also, at the conclusion of the Arbitrator's receipt of evidence, the Arbitrator shall issue a written decision setting forth the award, if any, that explains the essential findings and conclusions on which the award is based.  The Arbitrator shall have the authority to award any relief authorized by law in connection with the asserted claims or disputes.  The Arbitrator's decision and any award shall be final and binding on both the Company and Employee and it may be entered as a judgment in any court of competent jurisdiction, and shall not be appealable except as required by applicable law.

**Place of Arbitration**

The arbitration shall take place in the county in which the Employee was employed by the Company at the time the arbitrable dispute(s) or claim(s) arose.

**Governing Law**

We understand and agree that any dispute(s) and claim(s) to be arbitrated under this Agreement shall be governed by the laws of the state in which the Employee was employed at the time the arbitrable dispute(s) or claim(s) arose.

**Costs of Arbitration**

We agree that the Company will bear the Arbitrator's fee and any other type of expenses or cost that the Employee would not be required to bear if he or she were free to bring the dispute(s) or claim(s) in court, as well as any other expense or cost that is unique to arbitration. The Company and Employee shall each bear their own attorneys' fees incurred in connection with the arbitration, and the Arbitrator will not have authority to award attorneys' fees except as required or permitted by applicable law. If there is a dispute as to whether the Company or Employee is the prevailing party in the arbitration, the Arbitrator will decide the issue.

**Severability**

We understand and agree that if any term or portion of this Agreement shall, for any reason, be held to be invalid or unenforceable or to be contrary to public policy or any law, then the remainder of this Agreement shall not be affected by such invalidity or unenforceability but shall remain in full force and effect, as if the invalid or unenforceable term or portion thereof had not existed within this Agreement.

**Complete Agreement**

We understand and agree that this Agreement contains the complete agreement between the Company and Employee regarding the subjects covered in it; that it supersedes any and all prior representations and agreements between us, if any; and that it may be modified only in writing, expressly referencing this Agreement and Employee by full name, and signed by the Chief Executive Officer of the Company and signed by the Employee.

**Knowing and Voluntary Agreement**

The Employee has been advised to consult with an attorney of his/her own choosing before signing this Agreement, and has had the opportunity to negotiate the terms of this Agreement. The Employee agrees that he/she has read this Agreement carefully and understands that by signing it, he/she is waiving all rights to a trial or hearing before a judge or jury with respect to any and all disputes and claims regarding Employee's employment with the Company or the recruitment to or termination thereof.

Date: February 11, 2022

_[signature]_
Employee Signature

**Albert Mark Gold**
Employee Name (Please Print)

Date: February 11, 2022

**Illumina, Inc.**

By: _Sue McGrath_
Sue McGrath, Vice President, H.R.