UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT MARK GOLD,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., et al.,<br><br>Defendants. | Case No. 22-cv-05036-JST<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 8 |

Before the Court is the motion to dismiss and compel arbitration filed by Defendants Illumina, Inc., and Verinata Health, Inc. ECF No. 8. The Court will grant the motion and stay this case.

## I.   BACKGROUND

In January 2022, Plaintiff Albert Mark Gold accepted an offer of employment with Verinata, which is a wholly owned subsidiary of Illumina. ECF No. 1 ¶¶ 3, 7-8. The offer letter indicated that the employment offer was contingent on Gold's signing of an arbitration agreement. *Id.* at 12 ("This employment offer is also contingent on . . . signing of . . . the Arbitration Agreement.").

The arbitration agreement was executed on February 11, 2022. *Id.* ¶ 10; ECF No. 8-1 at 7-9. Per its terms, the arbitration agreement "[wa]s entered into between Illumina, Inc., a Delaware corporation, or any of its current and future subsidiaries, parents, affiliates, successors, or assigns ('the Company') and the employee named below ('Employee')." ECF No. 1 at 17. The agreement provides that any arbitration "shall take place in the county in which the Employee was employed by the Company at the time the arbitrable dispute(s) or claim(s) arose." *Id.* at 18.

On April 22, 2022, Illumina terminated Gold's employment. *Id.* ¶ 19. On July 20,

Illumina initiated an arbitration against Gold with JAMS in San Diego County. *Id.* ¶¶ 20-21; *id.* at 29-36. On August 11, Gold demanded that the arbitration proceeding be dismissed because it should have been initiated in San Mateo County, where Gold was employed when the arbitrable dispute arose. *Id.* ¶ 22; ECF No. 8-2 at 5-6. On August 18, the parties agreed to change the arbitration venue to San Mateo. ECF No. 8-2 at 8-9. On August 29, JAMS distributed a supplemental strike list, which noted counsel's prior agreement to change the arbitration venue. *Id.*

One week later, Gold filed this suit against Illumina for retaliation, unfair competition, wrongful termination, and breach of contract. ECF No. 1. Defendants now move to compel arbitration of Gold's claims. ECF No. 8.

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## III.    LEGAL STANDARD

"The arbitrability of a particular dispute is a threshold issue to be decided by the courts." *Nagrampa v. MailCoups*, 469 F.3d 1257, 1268 (9th Cir. 2006). The Federal Arbitration Act ("FAA") states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a 'liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

On a motion to compel arbitration, a court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden to prove the existence of an arbitration agreement by a preponderance of the evidence. *Knutson*, 771 F.3d at 565. "When a party opposes a motion to compel arbitration on the grand that no agreement to arbitrate was made, the court 'should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.'" *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D.

Cal. 2019) (quoting *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007)). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (alteration in original) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)).

If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. 9 U.S.C. § 3.

## IV. DISCUSSION

Defendants move to compel arbitration of Gold's claims under the arbitration agreement. Gold opposes the motion, arguing that no valid, enforceable arbitration agreement exists. Because "state contract law controls whether the parties have agreed to arbitrate," the Court considers whether a valid, enforceable arbitration agreement exists under California law. *Knutson*, 771 F.3d at 565.

### A. Consideration

Gold argues that the arbitration agreement fails for lack of consideration. As the Ninth Circuit has explained, the "promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). The arbitration agreement states that the parties, defined as "Illumina, Inc., . . . or any of its current and future subsidiaries" and Gold, "mutually agree to submit to binding arbitration any and all disputes . . . arising from or relating to [Gold's] . . . employment with [Illumina]." ECF No. 1 at 17. Each party's promise to be bound by arbitration and forego a judicial forum for such disputes constitutes adequate consideration to support the agreement.

### B. Enforceability

Gold argues that Verinata cannot enforce the arbitration agreement because it is not a signatory to the agreement.

"State law determines whether a non-signatory to an agreement containing an arbitration clause may compel arbitration." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022). Under California law, non-signatories who are third-party beneficiaries to the arbitration agreement may compel arbitration. *Ronay Family Ltd. P'ship v. Tweed*, 26 Cal. App. 4th 830, 838 (2013). To qualify as a third-party beneficiary, the non-signatory is "obligated to prove that 'express provisions of the contract,' considered in light of the 'relevant circumstances,' show that (1) 'the third party would in fact benefit from the contract;' (2) 'a motivating purpose of the contracting parties was to provide a benefit to the third party;' and (3) permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'" *Ngo*, 23 F.4th at 946 (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)).

The express language of the arbitration agreement shows that Verinata would benefit from the agreement and that the agreement was designed to benefit Verinata. The arbitration agreement, entered into "between Illumina . . . or any of its current and future subsidiaries . . . ('the Company') . . . and [Gold]," is a mutual agreement to arbitrate disputes or claims arising from or relating to Gold's employment with Illumina or any of its subsidiaries. ECF No. 1 at 17. The arbitration agreement, as written, would benefit Verinata by permitting it to compel arbitration of employment-related disputes with Gold. *Compare Ngo*, 23 F.4th at 946-47 (holding that non-signatory failed to prove it would benefit from a contract which provided that only specified parties could compel arbitration because any prospective benefit to the non-signatory was "predicated on the decisions of others to arbitrate"). The arbitration agreement was drafted to provide a benefit to Verinata, Gold's employer, by allowing it to compel arbitration of employment-related disputes.

Permitting Verinata to enforce the arbitration agreement is also consistent with the objectives of the contract and the reasonable expectations of the contracting parties. "To make this determination, [courts] focus on 'the language of the contract and all of the relevant circumstances under which the contract was entered into' to determine if 'third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the

4

enterprise embodied in the contract, read in light of surrounding circumstances.'" *Ngo*, 23 F.4th at 948 (emphasis omitted) (quoting *Goonewardene*, 6 Cal. 5th at 830-31). The text of the agreement evinces the parties' intent that the arbitration clause should apply to Illumina's subsidiaries, including Verinata. The express terms of the agreement permit Verinata to compel arbitration of employment-related disputes. That the arbitration agreement was entered into as a condition of Gold's employment with Verinata further suggests that permitting Verinata to enforce the agreement will effectuate the parties' objectives by requiring the arbitration of employment-related disputes.

The Court finds that Verinata is a third-party beneficiary to the arbitration agreement, such that Verinata may enforce the agreement and compel arbitration.

### C.  Material Breach

Gold argues the arbitration agreement cannot be enforced due to Defendants' material breach of the agreement's terms.

"Material breach is a defense to the enforcement of an arbitration agreement under 9 U.S.C. § 2." *Brunner v. Lyft, Inc.*, No. 19-cv-4808-VC, 2019 WL 6001945, at *2 (N.D. Cal. Nov. 14, 2019). "Whether a partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.'" *Brown v. Grimes*, 192 Cal. App. 4th 265, 278 (2011) (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852). "Failure to pay arbitration fees in a timely manner or to participate in arbitration can constitute breach." *Belyea v. GreenSky, Inc.*, --- F. Supp. 3d ----, 2022 WL 14965532, at *9 (N.D. Cal. Oct. 26, 2022). "However, in most cases finding material breach, a defendant either utterly refuses to participate in [the] arbitration proceeding, or an arbitration provider terminates the proceedings after sending several notices of unpaid fees." *Id.* (internal citation omitted).

Gold argues Defendants materially breached the arbitration agreement twice: first, on July 20, 2022, by initiating the arbitration in San Diego County; and second, on August 29, when JAMS issued a second strike list of proposed arbitrators while continuing to administer the arbitration proceeding from San Diego County. Gold cites no authority to suggest that these are

5

the kinds of action that constitute material breach of an arbitration agreement. As shown by its language, the purpose of the arbitration agreement was to ensure that all disputes and claims arising from Gold's employment would be subjected to binding arbitration. ECF No. 1 at 17-19. On August 18, 2022—just seven days after Gold first raised the venue objection, and more than a week before JAMS issued a second strike list—the parties agreed to change the arbitration venue to San Mateo. ECF No. 8-2 at 5-6, 8-9. The Court is not persuaded that the initiation of the arbitration in San Diego or the fact that JAMS issued a second strike list while the arbitration continued to be administered from San Diego amounts to a serious breach that precluded substantial performance of the arbitration agreement.[1]

The Court finds that Gold fails to prove that any breach of the arbitration agreement was sufficiently material to preclude enforcement of the agreement.

### D.   Unconscionability

Finally, Gold argues that the arbitration agreement is unconscionable. "Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made.'" *Lim*, 8 F.4th at 1000 (quoting Cal. Civ. Code § 1670.5(a)). "To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability . . . 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Poublon*, 846 F.3d at 1260).

Procedural unconscionability "focuses on 'oppression or surprise due to unequal bargaining power.'" *Id.* (quoting *Poublon*, 846 F.3d at 1260). "Oppression can be established 'by showing the contract was one of adhesion or by showing from the "totality of the circumstances surrounding the negotiation and formation of the contract" that it was oppressive.'" *Id.* (quoting *Poublon*, 846 F.3d at 1260).

/ / /

---

[1] Gold does not clearly articulate why JAMS's distribution of a second strike list from San Diego amounts to breach of contract by Defendants; Gold does not allege that Defendants had the power to control the second strike list, and Defendants had agreed to a change of venue a week earlier.

Such circumstances may include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-37 (2019) (quoting *Grant Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015)).  Unfair surprise "may arise when a party with less bargaining power is not told about an unusual provision, or the party is otherwise 'lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement.'" *Poublon*, 846 F.3d at 1261 n.2 (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)).

Gold only indirectly addresses procedural unconscionability, arguing that the arbitration agreement was presented to him on a "take it or leave it" basis.  ECF No. 13 at 6.  Gold thus seems to argue that the arbitration agreement is procedurally unconscionable because it amounts to a contract of adhesion.  "A contract of adhesion is one 'imposed and drafted by the party of superior bargaining strength[ that] relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"  *Lim*, 8 F.4th at 1000 (alteration in original) (quoting *Poublon*, 846 F.3d at 1261).  Because Gold's offer of employment was contingent on his signing of the standalone arbitration agreement, which is a pre-written contract drafted by Defendants, the arbitration agreement may amount to a contract of adhesion.[2]

However, "[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'"  *Poublon*, 846 F.3d at 1261 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).  This case presents no other circumstances constituting

---

[2] The Court notes that Gold does not suggest he was denied the opportunity to negotiate the terms of the arbitration agreement, and the text of the arbitration agreement states that "[t]he Employee . . . has had the opportunity to negotiate the terms of this Agreement."  ECF No. 1 at 19.

7

oppression or surprise: Gold was advised about the arbitration agreement in his offer letter—which he received several weeks before he signed the arbitration agreement—and the arbitration agreement is a three-page standalone document. Gold does not suggest he was given insufficient time to review the arbitration agreement before signing it, and the text of the agreement states that "[t]he Employee has been advised to consult with an attorney of his/her own choosing before signing this Agreement." ECF No. 1 at 19. Nothing suggests that Defendants concealed the existence or nature of the arbitration agreement, or that Gold was placed under duress, lied to, or manipulated into signing it. While the arbitration agreement is adhesive, the Court finds no other indication of oppression or surprise.

Accordingly, "the [arbitration] agreement will be enforceable unless the degree of substantive unconscionability is high." *Poublon*, 846 F.3d at 1261 (quoting *Serpa*, 215 Cal. App. 4th at 704). To be substantively unconscionable, "the agreement must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience.'" *Id.* (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). "The 'central idea' is that 'the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party.'" *Id.* (quoting *Baltazar*, 62 Cal. 4th at 1244).

Gold argues that the omission of Verinata as a named party to the arbitration agreement renders the agreement substantively unconscionable. Gold cites no authority to support this argument, but simply asserts that "[i]t is difficult to imagine a more fundamental and egregious example of substantive unconscionability in a mandatory arbitration employment contract than [] concealing and failing to identify a real party in interest." ECF No. 13 at 13. The Court is not persuaded that Illumina concealed or failed to identify a real party in interest. Gold is correct that the agreement, while expressly "entered into between Illumina . . . or any of its current and future subsidiaries" and Gold, does not specifically name the particular Illumina subsidiary that directly employed Gold. However, it is not clear why the failure to mention Verinata by name renders the agreement unduly oppressive to Gold or unreasonably favorable to Illumina.

The Court is not persuaded that the arbitration agreement is substantively unconscionable.

8

In the absence of substantive unconscionability, the arbitration agreement is enforceable. *See Poublon*, 846 F.3d at 1261.

The Court finds that a valid agreement to arbitrate exists and is enforceable by Verinata. The parties do not dispute that, if a valid arbitration agreement exists, it governs the claims raised in this action. Accordingly, the Court will grant Defendants' motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted, and this case is hereby stayed.

Upon completion of the arbitration proceedings, the parties shall jointly submit to the Court, within fourteen days, a report advising the Court of the outcome of the arbitration, and request that the case be dismissed or that the case be reopened and a case management conference be scheduled. In the meantime, the Clerk shall administratively close this case.

**IT IS SO ORDERED.**

Dated: July 27, 2023



JON S. TIGAR
United States District Judge